# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY,<br><br>  Plaintiff<br><br>v.<br><br>SFR INVESTMENTS POOL 1, LLC, et al.,<br><br>  Defendants | Case No.: 2:14-cv-01131-APG-VCF<br><br>**Order (1) Granting Plaintiff's Motion for Summary Judgment, (2) Denying SFR's Motion for Summary Judgment, and (3) Granting SFR's Motion for Default Judgment**<br><br>[ECF Nos. 94, 96, 99] |

Plaintiff Deutsche Bank National Trust Company (Deutsche) sues to determine whether a deed of trust still encumbers property located at 224 West La Madre Way in North Las Vegas following a non-judicial foreclosure sale conducted by a homeowners association (HOA), defendant Pearl Cove III Homeowners Association (Pearl). Deutsche seeks a declaration that the HOA sale did not extinguish the deed of trust. Defendant SFR Investments Pool 1, LLC purchased the property at the HOA sale. SFR counterclaims and cross-claims against the former homeowners, Apande Nelson Ejelle and Martha Massango, to quiet title.[1]

Deutsche moves for summary judgment, arguing that the former homeowners made payments sufficient to satisfy the superpriority lien prior to the sale. Deutsche also argues that the sale is void because the notices were not sent to all junior lienholders and the sale should be equitably set aside. SFR opposes and moves for summary judgment, arguing that the sale is presumed valid and all junior liens, including the deed of trust, were extinguished. SFR also moves for default judgment against Ejelle and Massango.

---

[1] SFR also asserted a slander of title claim against BONY. SFR states in its motion for summary judgment that it dismisses the slander of title claim. ECF No. 96 at 3.

The parties are familiar with the facts, and I will not repeat them here except where necessary to resolve the motions. I grant Deutsche's motion and deny SFR's motion because the former homeowners paid the superpriority amount prior to the HOA sale. Finally, I grant SFR's motion for default judgment against Ejelle and Massango.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Waiver**

SFR contends that Deutsche waived its argument that the former homeowners satisfied the superpriority lien because Deutsche did not raise it in either its amended complaint or in its

2

1 answer to SFR's counterclaim.  However, Deutsche raised it multiple times in its answer to
2 SFR's counterclaim.  Deutsche denied SFR's allegations that no one tendered the superpriority
3 amount and it asserted defenses of tender and that the homeowners paid the superpriority
4 amount. ECF Nos. 20 at 11 (SFR's counterclaim); 80 at 3, 6, 8 (Deutsche's answer).
5 Consequently, Deutsche has not waived the issue of whether the homeowners' payments
6 satisfied the superpriority lien.

   **B.  Homeowner Tender**

   Deutsche contends the former homeowners made payments sufficient to satisfy the
superpriority amount.  SFR responds that issues of fact remain as to the amount of the
superpriority lien and whether the HOA applied or was required to apply the payments to that
lien.

   1.  Lien Amount

   Deutsche contends it has established the superpriority amount through Pearl's ledger.
SFR responds that Deutsche relies on unauthenticated hearsay to establish the amount of
monthly assessments and it fails to establish there were no maintenance or nuisance abatement
charges for this property.

   The notice of delinquent assessment lien was recorded on February 18, 2011 by Pearl's
foreclosure agent, Nevada Association Services, Inc. (NAS). ECF No. 94-4.  The notice of
delinquent assessment lien identified a total amount due of $819.75, with $640.18 of that
consisting of late fees, collection fees, and interest. *Id.* at 2.  At the time of the notice of
delinquent assessment lien, the homeowner was in arrears for five months' worth of assessments.
ECF No. 94-5 at 2.  Both NAS's and Pearl's ledgers show the monthly assessment amount as
$26. ECF Nos. 94-5; 94-11.

On March 16, 2012, the homeowner paid $500 to NAS. ECF No. 94-10. About two weeks later, NAS distributed $200 of that amount to Pearl. *Id.* at 3. On March 20, 2012, the homeowners made another payment directly to Pearl in the amount of $342. ECF No. 94-11. Pearl's ledger shows each of these payments was deducted from a running balance that includes HOA dues and late fees. *Id.*

SFR objects to the ledgers as unauthenticated hearsay. However, Federal Rule of Civil Procedure 56 does not require that evidence be presented in admissible form at summary judgment. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Under Rule 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Under Federal Rule of Evidence 901(a), a party offering evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Deutsche has presented sufficient evidence from which a reasonable jury could find that the NAS and Pearl ledgers and other records are authentic. Both contain identifying markers and are consistent with each other and the recorded notice of delinquent assessment lien. Deutsche could call a witness from Pearl to identify the monthly assessment amount and to attest there are no maintenance or nuisance abatement charges for this property. Because the evidence could be presented in admissible form at trial, I may consider it at summary judgment. *Id.* SFR has not presented any evidence that the assessment amount is something other than what the ledgers show or that there are nuisance abatement or maintenance charges. SFR "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It has not done so.

Finally, SFR contends that Deutsche errs in its calculation of the superpriority amount because it limits the number of unpaid assessments to five instead of nine. However, the Supreme Court of Nevada has rejected similar arguments. *See Saticoy Bay LLC, Series 346 S Milan St. v. MetLife Home Loans, LLC*, No. 74127, 437 P.3d 168, 2019 WL 1244785, at *1 (Nev. Mar. 15, 2019) (rejecting the argument that "the superpriority portion includes an amount equal to 9 months of HOA assessments, regardless of whether they were actually owed when the enforcement action commenced"); *Daisy Tr. v. Bank of New York Mellon*, No. 70804, 2018 WL 1876197, at *1 (Nev. App. Apr. 9, 2018) (holding there was no superpriority lien because "no past due assessments existed when the Notice of Lien was recorded which initiated the subject foreclosure"). The homeowners were in arrears only five months at the time the notice of delinquent assessment lien was recorded, so the superpriority amount was $130.

### 2. Application of the Payments

Deutsche contends the homeowners' payments were applied to the oldest assessment first, as shown by the HOA's collections policy. SFR responds that Deutsche cannot show the payments were applied to the superpriority lien because the ledger shows the payments were applied generally to the homeowners' account, which included charges such as late fees and other unpaid monthly assessments. SFR also contends Deutsche cannot rely on the HOA's 2014 collection policy because the payments were made in 2012 and there is no evidence of what the HOA's policy was at that time. SFR asserts that if the court reaches the question of how the payments should be applied as an equitable matter, it should determine that the HOA would not apply the payments to the superpriority amount because the HOA would want to maintain its superpriority lien until it was paid in full.

1    Pearl's 2014 collections policy provides that payments to the HOA "will be directed to
2 the oldest assessment balance first, until such time all assessment balances are paid, and then to"
3 other charges such as late fees, interest, and collection costs. ECF No. 94-12 at 3.  However,
4 there is no evidence as to what Pearl's collections policy was, or if it even had one, in 2012 when
5 the homeowners made the payments in this case.

6    A homeowner's payments can cure the superpriority default. *9352 Cranesbill Tr. v. Wells
7 Fargo Bank, N.A.*, 459 P.3d 227, 230 (Nev. 2020).  In general, "[w]hen a debtor partially
8 satisfies a judgment, that debtor has the right to make an appropriation of such payment to the
9 particular obligations outstanding." *Id.* (quotation omitted).  "The debtor must direct that
10 appropriation at the time the payment is made." *Id.* (quotation omitted).  If the debtor does not
11 direct how to apply the payment, then the creditor may decide how to allocate it. *Id.*  "If neither
12 the debtor nor the creditor makes a specific application of the payment, then it falls to the court
13 to determine how to apply the payment" by reference to "the basic principles of justice and
14 equity so that a fair result can be achieved." *Id.* (quotation omitted).

15    Here, the homeowners stated the $342 payment was for monthly assessments from
16 January to December 2012, with another $30 in late fees for the first three months of 2012. ECF
17 No. 94-11.  This payment therefore was not directed at the superpriority assessments that were
18 due for the five months preceding February 2011, when the notice of delinquent assessment lien
19 was recorded.  Accordingly, this payment did not satisfy the superpriority lien.

20    The parties have not pointed to evidence showing whether the homeowners directed how
21 the $500 payment was to be applied.  In fairness to the parties, they likely did not do so because
22 *Cranesbill Trust* was issued after briefing on summary judgment was complete, so they may not
23 have appreciated the importance of the homeowners' directions.  However, the parties previously

had a round of summary judgment in this case and evidence was presented regarding the homeowners' directions for that payment. Attached to Deutsche's initial summary judgment motion is a handwritten note from Massango to NAS referencing the $500 check. ECF No. 73-1 at 137-38. Massango states that the check is for "2/29/2012 to 12/29/2012." *Id.* at 137. Massango thus directed that the $500 payment cover the same period of assessments as the $342 payment.[2] NAS sent $200 of that payment to Pearl. Pearl's ledger shows the $200 being applied to a running balance, without reference to whether it was directed to dues or late fees, and it did not specify which dues were being paid. ECF No. 94-11 at 5.

The homeowners directed double payment for the same assessments, which effectively leaves the $200 payment unallocated by the debtors. There is no evidence as to how Pearl applied it, other than as a credit to a running balance that included the superpriority assessments, other unpaid assessments, late fees, and interest.[3] I therefore must determine the equitable allocation of the $200 payment.

The Supreme Court of Nevada provided some direction on how I am to make this determination. I "should make the allocation in view of all of the circumstances, as is most in accord with justice and equity and will best protect and maintain the rights of both the debtor and creditor." *Cranesbill Tr.*, 459 P.3d at 231 (quotation omitted). In reaching that determination, I should consider what the debtor likely desired when making the payment. *Id.* I also should consider that other jurisdictions recognize a "legal preference for paying the earliest matured debts." *Id.* In addressing this legal preference, I may consider whether "the unpaid HOA

---

[2] To the extent SFR objects to this evidence, the result would be the same if I excluded it. Without the note from Massango, there is no direction from the homeowners about how to allocate the payment, and there is no evidence of how Pearl applied it, so I would allocate it.

[3] Even though Pearl is a party in this case, there is no evidence from Pearl about its policies in 2012 or how it applied this payment.

assessments and other costs the homeowner is required to pay to the HOA, such as the costs of foreclosure, to be on a running account, and therefore a single debt, or whether it considers there to be multiple accounts." *Id.* And I may reference general allocation guidelines in relevant treatises and Restatements, including those that relate to the debtor's obligation to third parties to pay the debt. *Id.* at 231 & n.4.

Here, it is likely that the homeowners would prefer the payment be allocated to the superpriority amount. As noted by the Supreme Court of Nevada, in HOA foreclosure cases in Nevada, "it seems likely that a homeowner would prefer to cure the default on the superpriority lien before satisfying any other debts owed to an HOA to avoid a superpriority lien foreclosure and the consequent loss of security to satisfy the obligation secured by the first deed of trust." *Id.* at 231 n.3. This is consistent with the legal preference for paying the earliest matured debts, particularly for running accounts like Pearl's ledger. *See* 70 C.J.S. Payment § 55 (2019) (stating that "[i]n the case of a running account . . . the court generally will apply [unallocated payments] to the extinguishment of the earliest items of indebtedness"); 60 Am. Jur. 2d Payment § 72 (2019) (same).[4] And this is in line with the homeowners' contractual obligation to Deutsche under the deed of trust to pay assessments and other liens that can attain priority over the deed of trust. *See* ECF No. 94-3 at 5-6; *Cranesbill Tr.*, 459 P.3d at 231 n.4 (stating that "a payment is generally allocated first to a debt that the debtor is under a duty to a third person to pay immediately" (quoting the Restatement (Second) of Contracts § 260(2)(a)).

Although SFR suggests that Pearl would have preferred to credit the payment to the superpriority amount last to preserve the superpriority lien, there is no evidence to support that assumption. Pearl simply maintained a running account without reference to what amounts had

---

[4] Both sources cited favorably in *Cranesbill Trust*, 459 P.3d at 231.

superpriority status. And the only evidence before me shows that Pearl made a contrary decision, at least in 2013 when it adopted its 2014 collections policy that allocates payments to the oldest assessments first.

In sum, justice and equity support applying the $200 payment to the oldest assessments due. *See Diakonos Holdings, LLC v. Katie Baby, LLC*, No. 77616, 462 P.3d 694, 2020 WL 2527451, at *1 (Nev. May 15, 2020) (holding that "the district court properly looked to the purpose of the relevant statutory scheme, [Nevada Revised Statutes] Chapter 116, and how partial payments have been applied to debts in other cases, in deciding that the homeowner's payments in this case applied to the assessments making up the superpriority default"). Because the homeowners paid $200 and the superpriority amount was $130, the superpriority lien was satisfied and the deed of trust was preserved by operation of law. *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). Because the sale was void as to the deed of trust by operation of law, SFR's bona fide purchaser status is irrelevant. *Id.* at 121. I therefore grant Deutsche's motion for summary judgment and deny SFR's motion.

**C. Motion for Default Judgment**

SFR moves for default judgment against the former homeowners, Ejelle and Massango. Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered, a party may seek entry of default judgment under Rule 55(b).

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo*

*Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Nonetheless, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (CD. Cal. 2004) (citation omitted). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Peno v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Whether to grant a default judgment lies within my discretion. *Id.*

I consider the following factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

The clerk of court entered defaults against Ejelle and Massango. ECF No. 97. Neither of those defendants has appeared in this case. Thus, there is no procedural impediment to entering a default judgment.

The first *Eitel* factor considers whether SFR will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 214-CV-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016). Because Ejelle and Massango are not participating in this case, if default judgment is not entered, SFR will be unable to pursue its claim against them. This factor weighs in favor of entry of default judgment.

1    The second and third *Eitel* factors examine whether the "plaintiff state[s] a claim on
2 which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see*
3 *also* Fed. R. Civ. P. 8.  SFR's cross-complaint seeks a declaration that the HOA foreclosure sale
4 extinguished Ejelle and Massango's interests in the property. ECF No. 20.  SFR alleges that it
5 acquired the property by successfully bidding for it at a properly conducted, publicly held HOA
6 foreclosure sale. *Id.* at 9-10.  I must accept these allegations as true. Fed. R. Civ. P. 8(b)(6);
7 *TeleVideo*, 826 F.2d at 917-18.  At the time of this foreclosure sale, a properly conducted HOA
8 foreclosure sale extinguished the prior homeowners' interest and vested title in the purchaser
9 "without equity or right of redemption." Nev. Rev. Stat. § 116.31166 (2013).  Thus, the second
10 and third *Eitel* factors weigh in favor of the entry of a default judgment declaring that these
11 defendants' interests in the property have been extinguished.

12   In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation
13 to the seriousness of the defendant's conduct, whether large sums of money are involved, and
14 whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'"
15 *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting
16 *Landstar Ranger, Inc. v. Earth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010));
17 *PepsiCo.*, 238 F. Supp. 2d at 1176.  SFR's request for a declaration that Ejelle and Massango's
18 interests in the property are extinguished is proportional to the effect of a properly conducted
19 HOA foreclosure sale.  SFR does not seek any monetary relief against them.  Thus, the fourth
20 *Eitel* factor is satisfied as to the declaratory relief requested.

21   The fifth *Eitel* factor weighs the possibility of a dispute regarding material facts in the
22 case. *PepsiCo.*, 238 F. Supp. 2d at 1177.  Ejelle and Massango's failure to respond suggests there

are no disputed material facts.  Thus, the fifth *Eitel* factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor considers whether the defendants' defaults are due to excusable neglect. *Id.*  SFR served Ejelle and Massango in 2016. ECF Nos. 69, 70.  The clerk of court entered default against them in January 2020 and they still have not appeared. ECF No. 97.  There is no evidence before me that the failure to respond is due to excusable neglect. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action).  Given the time period during which these defendants had notice of this case yet failed to appear, it is unlikely that they failed to respond due to excusable neglect.  Thus, the sixth *Eitel* factor weighs in favor of entry of default judgment.

Finally, the seventh *Eitel* factor takes into account the policy favoring a decision on the merits.  "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  But these defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Thus, while this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering a default judgment.  A decision on the merits is desirable, but under these circumstances, default judgment is warranted.  I therefore grant SFR's motion for default judgment.

## II.  CONCLUSION

I THEREFORE ORDER that defendant SFR Investments Pool 1, LLC's motion for summary judgment **(ECF No. 96) is DENIED**.

I FURTHER ORDER that plaintiff Deutsche Bank National Trust Company's motion for summary judgment **(ECF No. 94) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the plaintiff Deutsche Bank National Trust Company and against defendants SFR Investments Pool 1, LLC and Pearl Cove III Homeowners Association as follows: It is hereby declared that the non-judicial foreclosure sale conducted by Pearl Cove III Homeowners Association on March 29, 2013 did not extinguish the deed of trust and the property located at 224 West La Madre Way in North Las Vegas, Nevada remains subject to the deed of trust.

I FURTHER ORDER that cross-claimant SFR Investments Pool 1, LLC's motion for default judgment **(ECF No. 99) is GRANTED**. The clerk of court is instructed to enter judgment in favor of the cross-claimant and against cross-defendants Martha Massango and Apande Nelson Ejelle as follows: It is hereby declared that the homeowners association's non-judicial foreclosure sale conducted on March 29, 2013 extinguished any interest Martha Massango and Apande Nelson Ejelle had in the property located at 224 West La Madre Way in North Las Vegas, Nevada.

I FURTHER ORDER the clerk of court to close this case.

DATED this 24th day of June, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE